J-S19027-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DEJON MALIK JOHNSON | : | |
| | : | |
| Appellant | : | No. 127 WDA 2021 |

Appeal from the Judgment of Sentence Entered December 17, 2020
In the Court of Common Pleas of Allegheny County
Criminal Division at No. CP-02-CR-0007405-2019

BEFORE:   DUBOW, J., MURRAY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY MURRAY, J.:                    **FILED: JULY 16, 2021**

Dejon Malik Johnson (Appellant) appeals from the judgment of sentence imposed after the trial court convicted him of robbery and criminal conspiracy.[1]  We affirm.

The trial court recounted the following facts:

The evidence presented at trial established that on June 23, 2019, Tiontay Bey [the victim] was walking to a friend's house in the McKeesport area of Allegheny County.  She had just left a UniMart where she had purchased cigarettes and sunflower seeds and was walking toward the Crawford Village housing complex while [talking] with her friend Amberly Hogan on her iPhone.  As she crossed the intersection of Oaklyn and McCleary a group of 5-6 teenagers emerged from an alleyway and approached her.  Some of the group stayed back while [Appellant] and another individual approached her directly.  [Appellant] pulled a gun and pointed it directly at her chest and said, "come up off it."  After she gave

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 3701(a)(1)(ii) and 903.

them the money in her pocket, she was instructed to give up her phone that was in her hand, and her tennis shoes.

The victim immediately recognized [Appellant] as the son of a woman she has known for more than 25 years. [Appellant] was wearing black sweatpants and a black hooded sweatshirt. The hood was up on the sweatshirt and the string on the hood was pulled tight around the face so she could see the area from his eyebrows to his bottom lip. She asked "Dejon, why would you rob me", "I know you, you don't need to do this." She turned over all of the items and the group of teens took off. She then ran full speed toward Crawford Village to the home of her friend Tyra Reese. When she arrived, she told her friend she had been robbed and asked to use her phone to call Tionte Askew, [Appellant's] mom, to tell her [Appellant] had robbed her. After she couldn't reach [Appellant's] mom she used Tyra's phone to try to track her own iPhone using the Find My iPhone App. After locating her iPhone, on Odair Street, [the victim], Tyra Reese, and Amber[ly] Hogan decided to take Ms. Hogan's car and drive to that location.

When they arrived at that location, Odair Street, [the victim] was in the passenger seat. She observed a group of men midway up the street. [Appellant] was standing in the street and was now shirtless, but still wearing black sweatpants. She recognized her iPhone in his hand because of the Mickey Mouse cell phone case. She yelled [to Appellant], "Dejon, give me my phone back. Keep the shoes and the money just give me my phone." One of the men in the group said, "you're making it hot, get the fuck out of here." After the victim continued to plead with [Appellant] to return her phone, she noticed that the man who told her to "get the fuck out" had a gun. When she told [Appellant] he could keep everything else, that she just wanted her phone, someone in the group shot at the car. Amber[ly] Hogan drove in reverse up Odair Street to leave the scene. Police had responded to the area after hearing shots fired and saw Ms. Hogan's vehicle backing up at a high rate of speed. When the vehicle was stopped the women reported the robbery. Officers spoke with the victim on scene and took a report. Approximately twenty minutes later [Appellant] arrived back on scene and told officers "I was there, but I didn't do it."

Trial Court Opinion, 3/11/21, at 4-5 (record citations omitted).

The Commonwealth charged Appellant with the aforementioned crimes, as well as simple assault and recklessly endangering another person (REAP). Following a non-jury trial on October 1, 2020, the court found Appellant guilty of robbery and criminal conspiracy, and not guilty of simple assault and REAP. On December 17, 2020, the court sentenced Appellant to 160 to 320 days of incarceration, with credit for time served, followed by 10 years of probation. Appellant filed a timely post-sentence motion which the trial court denied on December 28, 2020. This timely appeal followed.[2]

Appellant presents two evidentiary issues for review:

1. Whether the verdict was against the weight of the evidence to convict [Appellant] of Robbery?

2. Whether the evidence presented by the Commonwealth was sufficient to support the conviction of [Appellant] for Criminal Conspiracy — Robbery?

Appellant's Brief at 3.

In his first issue, Appellant challenges the weight of the evidence. Appellant's Brief at 11-14. We have stated:

The finder of fact is the exclusive judge of the weight of the evidence as the fact finder is free to believe all, part, or none of the evidence presented and determines the credibility of the witnesses.

As an appellate court, we cannot substitute our judgment for that of the finder of fact. Therefore, we will reverse a jury's verdict and grant a new trial only where the verdict is so contrary to the evidence as to shock one's sense of justice. A verdict is said to be contrary to the evidence such that it shocks one's sense of justice when the figure of Justice totters on her pedestal, or when

_____

[2] Appellant and the trial court have complied with Pa.R.A.P. 1925.

the jury's verdict, at the time of its rendition, causes the trial judge to lose his breath, temporarily, and causes him to almost fall from the bench, then it is truly shocking to the judicial conscience.

Furthermore, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Boyd*, 73 A.3d 1269, 1274-75 (Pa. Super. 2013) (*en banc*) (citation and quotation marks omitted). "Thus, the trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings." *Commonwealth v. Diggs*, 949 A.2d 873, 879-80 (Pa. 2008) (citation omitted).

Appellant argues his robbery conviction is against the weight of the evidence because the victim's testimony "was so tenuous and uncertain so as to be lacking in credibility to support the conviction." Appellant's Brief at 10-11. Appellant complains that while the victim testified she immediately recognized Appellant, she "had never actually interacted with [him] before and had only seen him on Facebook." *Id.* at 12. Appellant also asserts the trial court should not have credited the victim's testimony because she had a prior conviction of *crimen falsi*. *Id.*

In response, the Commonwealth argues that Appellant, "asks that this Honorable Court re-weigh the evidence in his favor, which is improper unless a very high threshold is met: that the verdict was so contrary to the evidence

- 4 -

as to amount to a miscarriage of justice." Commonwealth Brief at 13. The Commonwealth is correct.

The trial court stated it "considered all of the evidence presented at trial in reaching the verdict." Trial Court Opinion, 3/11/21, at 6. Specifically:

> [The trial court] was aware of [the victim's] prior conviction for welfare fraud. However, I found the victim's testimony credible. She knew [Appellant] and was absolutely certain that it was [Appellant] and his friends that approached her after she left the UniMart, and that it was [Appellant] that pointed a gun at her chest and told her to "come up off it." Her friend Amberly Hogan heard her say "please don't shoot me" when she was being robbed because the two were talking over FaceTime when the robbery occurred. After the robbery she ran toward Crawford Village, in the opposite direction of her assailants. When she arrived at her friend Tyra's home she attempted to reach [Appellant's] mother in an attempt to get her property back. When that was unsuccessful, she tracked her cell phone to a location where she found [Appellant] holding her cell phone in his hand. All of the same arguments that [Appellant] raises on appeal to attack the credibility of the victim's testimony were raised at trial and rejected by this court. The testimony of the victim and her friend Ms. Hogan was credible and any different verdict would shock this court's sense of justice.

Trial Court Opinion, 3/11/21, at 6-7.

As previously stated, the factfinder — in this case the trial court — is the "exclusive judge of the weight of the evidence" and "determines the credibility of the witnesses." **Boyd, supra.** Here, the record reflects the trial court acted within its discretion in crediting the testimony of the Commonwealth's witnesses. **See, e.g., Commonwealth v. Griscavage**, 517 A.2d 1256, 1259 (Pa. 1986). Accordingly, Appellant's weight of the evidence claim does not merit relief.

In his second issue, Appellant argues the evidence was insufficient to sustain his conviction for criminal conspiracy. Appellant's Brief at 14-16. Appellant asserts, "no evidence was presented at trial to show that there was an agreement of any sort between [Appellant] and another individual for one of them to commit a robbery." Appellant's Brief at 15. He further argues the "basis of the conspiracy charge is simply that [the victim] was approached by multiple individuals. Even circumstantially, this alone is insufficient to support a conviction for conspiracy." *Id.*

We recognize our standard of review:

A claim challenging the sufficiency of the evidence presents a question of law. *Commonwealth v. Widmer*, 560 Pa. 308, 744 A.2d 745, 751 (2000). We must determine "whether the evidence is sufficient to prove every element of the crime beyond a reasonable doubt." *Commonwealth v. Hughes*, 521 Pa. 423, 555 A.2d 1264, 1267 (1989). We "must view evidence in the light most favorable to the Commonwealth as the verdict winner, and accept as true all evidence and all reasonable inferences therefrom upon which, if believed, the fact finder properly could have based its verdict." *Id.* Our Supreme Court has instructed:

[T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

> ***Commonwealth v. Ratsamy***, 594 Pa. 176, 934 A.2d 1233, 1236 n.2 (2007).

***Commonwealth v. Thomas***, 65 A.3d 939, 943 (Pa. Super. 2013).

With respect to criminal conspiracy, the trier of fact must find: (1) the defendant intended to commit or aid in the commission of the criminal act; (2) the defendant entered into an agreement with another (a "co-conspirator") to engage in the crime; and (3) the defendant or one or more of the other co-conspirators committed an overt act in furtherance of the agreed upon crime. 18 Pa.C.S.A. § 903. The essence of criminal conspiracy is the agreement between co-conspirators. We have explained:

> Mere association with the perpetrators, mere presence at the scene, or mere knowledge of the crime is insufficient to establish that a defendant was part of a conspiratorial agreement to commit the crime. There needs to be some additional proof that the defendant intended to commit the crime along with his co-conspirator. Direct evidence of the defendant's criminal intent or the conspiratorial agreement, however, is rarely available. Consequently, the defendant's intent as well as the agreement is almost always proven through circumstantial evidence, such as by the relations, conduct or circumstances of the parties or overt acts on the part of the co-conspirators. Once the trier of fact finds that there was an agreement and the defendant intentionally entered into the agreement, that defendant may be liable for the overt acts committed in furtherance of the conspiracy regardless of which co-conspirator committed the act.

***Commonwealth v. Golphin***, 161 A.3d 1009, 1018–19 (Pa. Super. 2017) (citations omitted).

Appellant claims "there was no evidence presented to indicate an agreement between [Appellant] and one or more individuals to commit a robbery, let alone an overt act committed in furtherance of the conspiracy."

Appellant's Brief at 10. The Commonwealth counters, "there was unquestionably sufficient circumstantial evidence of an agreement between [A]ppellant and members of his cohort to show that they acted in concert in intimidating the victim; that one of the group in particular directly confronted the victim with [A]ppellant; and that, after the robbery, the group all fled the scene together." Commonwealth Brief at 14. The record supports the Commonwealth's argument, as well as the trial court's determination that the evidence was sufficient to sustain Appellant's conspiracy conviction.

For example, the victim testified Appellant was part of a group that approached from an alley, with some of the group standing behind her, and Appellant and another male standing in front of her. N.T., 10/1/20, at 19, 21-22. The victim described Appellant pointing a gun at her chest and robbing her. *Id.* at 19, 66. After Appellant obtained the victim's cash, cell phone, and sneakers, he fled with the group back through the alley. *Id.* at 26. The victim's friend, Ms. Hogan, testified, *inter alia*, to being on the phone with the victim during the robbery, and hearing the victim say, "please don't shoot me." *Id.* at 116. Consistent with this testimony, the trial court found Appellant "conspired with those other men he was with to approach the victim and rob her of her belongings." Trial Court Opinion, 3/11/21, at 7. ***See also Commonwealth v. Russell***, 665 A.2d 1239, 1246 (Pa. Super. 1995) (evidence sufficient to sustain conviction for conspiracy where testimony showed group of men assembled together, conversed, shots were fired, and

men fled together); ***Commonwealth v. Nelson***, 582 A.2d 1115, 1119 (Pa. Super. 1990) (evidence sufficient to sustain conspiracy conviction where two men entered bar together, one announced hold-up, the men robbed bar and then fled together).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  07/16/2021